## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## BOWLING GREEN DIVISION

### *ELECTRONICALLY FILED*

| | |
|---|---|
| ILLUMINATED DESIGNS, INC., d/b/a MODERNWASH, | |
| Plaintiff, | |
| v. | Case No. __1:23-CV-124-GNS__ |
| CSG PROPERTY INVESTORS, LLC a/k/a SAMMY'S EXPRESS, THE PETTIT GROUP, LLC, and ROBERT J. GIANNONE | **COMPLAINT** |
| Defendants. | |

### COMPLAINT
### (JURY TRIAL DEMANDED)

Plaintiff, Illuminated Designs, Inc., d/b/a ModernWash ("ModernWash" or "Plaintiff"), by counsel, for its Complaint against Defendants, CSG Property Investors, LLC ("CSG"), The Pettit Group, LLC ("Pettit"), and Robert J. Giannone (collectively "Defendants") alleges as follows:

### INTRODUCTION

1.      This is an action for copyright infringement under the federal Copyright Act, 17 U.S.C. § 501; misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836, the Kentucky Uniform Trade Secrets Act, KRS § 365.880 *et seq.* and the New Jersey Trade Secrets Act, N.J.S.A. 56:15-1 *et seq.*, and for breach of contract under Kentucky law. ModernWash is seeking monetary

1

damages, Defendants' profits, punitive damages, attorney fees, pre- and post-judgment interest, destruction of infringing and/or confidential materials, and injunctive relief.

## THE PARTIES

2.      Plaintiff ModernWash is a Kentucky corporation located at 5220 Scottsville Road, Bowling Green, Kentucky 42104.

3.      Defendant CSG is a limited liability company organized and existing under the laws of New Jersey, with a principal place of business at 11 Windermere Dr., Moorestown, New Jersey 08057, and with a registered agent of Robert J. Giannone, whose address for purposes of service of process is at 11 Windermere Dr., Moorestown, New Jersey 08057.

4.      Defendant Pettit is a limited liability company organized and existing under the laws of New Jersey, with a principal place of business at 497 Center Street, Sewell, NJ 08080, and with a registered agent of The Pettit Group, whose address for purposes of service of process is at 497 Center Street, Sewell, NJ 08080.

5.      Defendant Giannone is an individual residing in New Jersey with an address at 11 Windermere Dr., Moorestown, New Jersey 08057.

## JURISDICTION AND VENUE

6.      This court has original subject matter jurisdiction over the copyright claims as a federal question under 28 U.S.C. § 1331 and as copyright claims under 28 U.S.C. § 1338(a).

7.    This court has original subject matter jurisdiction over the claims of federal trade secret misappropriation as federal questions under 28 U.S.C. § 1331.

8.    This court has subject matter jurisdiction over the Kentucky trade secret misappropriation and breach of contract claims, these being joined with substantial and related claims under the U.S. Copyright Act and U.S. Defend Trade Secrets Act, under 28 U.S.C. § 1338(b); and under principles of supplemental jurisdiction under 28 U.S.C. § 1367.

9.    This court has personal jurisdiction over Defendant CSG because CSG contracted with a Kentucky citizen in ModernWash and in that contract, which is titled "Confidentiality and Non-Disclosure Agreement", CSG agreed that the federal courts of Kentucky located in this District have personal jurisdiction over it and that this District was the appropriate venue for any dispute between the parties under that agreement and otherwise expressly waived any objection to this District being the proper forum or venue for any disputes between the parties.  ModernWash further alleges in this action that CSG materially breached the Confidentiality and Non-Disclosure Agreement.

10.    This court has personal jurisdiction over Defendant Pettit because Pettit contracted with a Kentucky citizen in ModernWash and in that contract, which is titled "Confidentiality and Non-Disclosure Agreement", Pettit agreed that the federal courts of Kentucky located in this District have personal jurisdiction over it and that this District was the appropriate venue for any dispute between the parties under that agreement and otherwise expressly waived any objection to this District being

the proper forum or venue for any disputes between the parties. There is also personal jurisdiction over Pettit under Kentucky's long arm statute, KRS § 454.210, because it has caused tortious injury in this District and, upon information and belief, regularly does or solicits business, or engages in conduct in, or derives substantial revenue from the Commonwealth of Kentucky and/or has otherwise transacted business in Kentucky.

11.     This court has personal jurisdiction over Defendant Giannone as the owner of CSG and the signatory to the Confidentiality and Non-Disclosure Agreement on behalf of CSG (which is binding on personal representatives of CSG such as Giannone). Giannone further negotiated and executed this agreement on behalf of CSG. There is also personal jurisdiction over Giannone under Kentucky's long arm statute, KRS § 454.210, because he has directly caused tortious injury in this District and, upon information and belief, regularly does or solicits business, or engages in conduct in, or derives substantial revenue from the Commonwealth of Kentucky and/or has otherwise transacted business in Kentucky.

12.     Venue is proper under 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the events or omissions giving rise to the claims occurred in, or a substantial part of the intellectual property that is the subject of the action is situated in, and because Defendants are subject to personal jurisdiction in, this District.

## STATEMENT OF FACTS

### *ModernWash and Its Innovative Car Wash Designs*

13.     ModernWash is in the business of designing and fabricating materials for construction of unique car wash building designs.

14.    ModernWash is a "design-build" company which specializes in designing and constructing innovative, eye-catching car wash designs. Customers hire ModernWash to design and build custom car washes which will allow them to stand out from the competition. ModernWash's innovative car wash designs incorporate, among other things, unique steel frames, innovative roof designs and a variety of other modern architectural features.

15.    ModernWash creates original car wash building designs and fabricates materials for construction of its original designs.  It does not sell or license its original designs for others to use or modify to create derivative works of its building designs. It is imperative to ModernWash's success that its proprietary information is not used to create buildings that are not designed, created, and constructed by ModernWash.

16.    ModernWash's car wash designs are well known throughout the car wash industry.

17.    In addition to the technical drawings and/or architectural plans ModernWash has copyrighted, ModernWash maintains certain drawings, building designs, and technical drawings which it does not file publicly with the U.S. Copyright Office.  An example of these types of drawings includes "shop drawings", which are also known as fabrication drawings, that consist of detailed plans that provide fabricators with the information necessary to manufacture, fabricate, assemble, and install all the components of a structure.

18.    ModernWash has taken great steps and expended significant money and resources over the years to develop its shop drawings and other technical drawings

and treats its shop drawings and other technical drawings as proprietary and invaluable to its business model.

19.    The shop drawings and other drawings cannot be created or replicated by others unless provided or otherwise disclosed to them by ModernWash. ModernWash's shop drawings and other technical drawings not disclosed to the U.S. Copyright Office will hereinafter be referred to as the "Trade Secrets."

20.    ModernWash's design and fabrication/construction services are inextricably linked in that customers will hire ModernWash for both the design services and fabrication services that are associated with each particular job.  In other words, if a customer hires ModernWash, it is for the combination of services provided, and all revenues ModernWash earns from those customers are tied together.

***Defendant CSG Hires ModernWash to Design and Build Car Washes***

21.    In and around June of 2017, CSG contacted ModernWash to inquire about the possibility of evaluating and eventually acquiring building designs for a new car wash facility it planned to open.

22.    On June 28, 2017, ModernWash and CSG entered into a Confidentiality and Non-Disclosure Agreement, a copy of which is attached as **<u>Exhibit 1</u>** ("the CSG Agreement"). Under the CSG Agreement, ModernWash was to provide certain confidential information to CSG, including certain trade secrets, to CSG so that CSG could perform testing and engineering with an aim to eventually purchase a full ModernWash building package, which would include pricing, copyrighted technical

drawings and plans, as well as architectural and construction information related to the building design at issue.

23.     Under the CSG Agreement, the following were included as part of the definition of "Confidential Information": drawings, building designs, technical drawings, creation, construction of, applications, systems, components, trade secrets, business plans, know-how, and technologies relating to the building design that would be provided.

24.     Further under the CSG Agreement, CSG agreed, among other things, not to reproduce the Confidential Information; not to make known, divulge, publish, or communicate the Confidential Information; not to use or utilize the Confidential Information; and not to use the Confidential Information or any part thereof as a basis for the design or creation of any method, system, apparatus, or device similar to any method, system, apparatus, or device similar embodied in the Confidential Information.

25.     After entering into the CSG Agreement, and receiving the Confidential Information and other propriety information, including copyrighted technical drawings and design plans, CSG decided to hire ModernWash to design and construct a new car wash.

26.     CSG subsequently entered into additional agreements with ModernWash for drawings and fabrication of construction materials for a "Sammy's Express Car Wash" building to be located at Kaighn Avenue, Maple Shade Township, New Jersey.

27.     ModernWash ultimately provided CSG with copies of Confidential Information, including but not limited to its Trade Secrets, all of which detailed the elements of the Sammy's Express Car Wash building.

28.     One of the items provided to CSG by ModernWash were the technical "install" drawings it had created for the Sammy's Express Car Wash building. These "technical drawings" are copyrighted by ModernWash and titled *Axiom Prime – Sammy's Express Technical*. ModernWash owns a valid and subsisting copyright registration in *Axiom Prime – Sammy's Express Technical* (Reg. No. VA 2-288-195) with an effective date of registration on February 18, 2022.  A copy of the copyright registration certificate for *Axiom Prime – Sammy's Express Technical* is attached to this Complaint as **Exhibit 2**.

29.     ModernWash also provided CSG with the architectual plans and drawings it had created for the Sammy's Express Car Wash building. This architectural work is copyrighted by ModernWash and titled *Axiom Prime – Sammy's Express*. ModernWash owns a valid and subsisting copyright registration in *Axiom Prime – Sammy's Express* (Reg. No. VA 2-289-861) with an effective date of registration on February 18, 2022.  A copy of the copyright registration certificate for *Axiom Prime – Sammy's Express* is attached to this Complaint as **Exhibit 3**.

30.     CSG used the copyrighted works referenced above, the Trade Secrets, the Confidential Information and other materials provided by ModernWash to CSG, in order to complete construction of the Sammy's Express Car Wash building in Maple Shade Township.

31.     As a standard practice, ModernWash required that its customers hire a local architect licensed in the state where ModernWash structures would be built.

32.     In accordance with this practice, CSG designated Pettit as its local architect in New Jersey. Pursuant to such designation, on August 16, 2017, ModernWash entered into a Confidentiality and Non-Disclosure Agreement with Pettit, a copy of which is attached as **Exhibit 4** (the "Pettit Agreement"). Under the Pettit Agreement, ModernWash was to provide certain confidential information to Pettit, including certain trade secrets, to Pettit so that Pettit could perform testing and engineering services for use on Pettit's client's Building Project. Pettit's client was CSG.

33.     Under the Pettit Agreement, the following were included as part of the definition of "Confidential Information": drawings, building designs, technical drawings, creation, construction of, applications, systems, components, trade secrets, business plans, know-how, and technologies relating to the building design that would be provided.   e

34.     Further under the Pettit Agreement, Pettit agreed, among other things, not to reproduce the Confidential Information; not to make known, divulge, publish, or communicate the Confidential Information; not to use or utilize the Confidential Information; and not to use the Confidential Information or any part thereof as a basis for the design or creation of any method, system, apparatus, or device similar to any method, system, apparatus, or device similar embodied in the Confidential Information.

9

*Defendants' Wrongful Acts*

35.    Shortly after completion of the Sammy's Express Car Wash location in Maple Shade Township, CSG again reached out to ModernWash about designing and constructing a second car wash.  CSG expressed concerns over costs and, as an option to try and save money, ModernWash suggested specific changes to the design, including the use of a mono-slope roof.

36.    After CSG and ModernWash exchanged a few emails on the potential second building, however, CSG cut off all communications with ModernWash and the discussions ceased.

37.    Unbeknownst to ModernWash, CSG began construction of a new car wash in Marlton, Evesham Township, New Jersey.  Upon information and belief, CSG hired Defendant Pettit to prepare city-set architectural plans and drawings for the new Sammy's Car Wash building construction.  The Pettit architectural drawings for the new Sammy's car wash in Marlton were submitted to the Evesham Township Planning Board.  Upon information and belief, the construction of the new Sammy's car wash located in Marlton was completed in August of 2022 and the facility opened to the public on or about August 26, 2022.  This facility is still open for operations as of the filing of this Complaint.

38.    In order to prepare the drawings and plans that were submitted to the Evesham Township Planning Board, upon information and belief, Defendant Pettit was provided with copies of and/or access to the Confidential Information, the Trade

Secrets, and/or the *Axiom Prime – Sammy's Express Technical* and *Axiom Prime – Sammy's Express* copyrighted works.

39.     In addition to the new Marlton Sammy's Car Wash building, CSG likewise hired Defendant Pettit to prepare city-set architectural plans and drawings for a third Sammy's Car Wash building to be constructed in Mount Laurel Township, New Jersey.  The plans were submitted to the Mount Laurel Township Zoning Board of Adjustments and eventually approved, and upon information and belief, construction began on the new Mount Laurel Township Sammy's Express Car Wash building in November of 2022.

40.     In order to prepare the drawings and plans that were submitted to the Mount Laurel Township Zoning Board of Adjustments, upon information and belief, Defendant Pettit was provided with copies of and/or access to the Confidential Information, the Trade Secrets, and/or the *Axiom Prime – Sammy's Express Technical* and *Axiom Prime – Sammy's Express* copyrighted works.

41.     The designs of the new Sammy Express Car Wash buildings in Marlton and Mount Laurel were derived from the drawings, building designs, and architectural plans, including but not limited to the *Axiom Prime - Sammy's Express Technical* and *Axiom Prime – Sammy's Express* copyrighted works, that were provided to CSG by ModernWash.

42.     In addition, the new Sammy's Express Car Wash buildings in Marlton and Mount Laurel copy the overall form and design, including but not limited to at least forty (40) different design elements, from the designs of ModernWash's *Axiom*

11

*Prime*, *Axiom Prime – Sammy's Express Technical*, and *Axiom Prime – Sammy's Express* architectural works.

43.    ModernWash has received no compensation for Defendants' unauthorized use of its copyrighted works, Trade Secrets, or Confidential Information.

44.    ModernWash has never given Defendants permission to use its copyrighted works, Trade Secrets, or Confidential Information except as provided in the Agreement.

<u>COUNT I</u>
**COPYRIGHT INFRINGEMENT—*AXIOM PRIME-SAMMY'S EXPRESS***
**(17 U.S.C. §§ 106, 113, 501)**
**(Against all Defendants)**

45.    ModernWash reincorporates and realleges paragraphs 21-44 of this Complaint as if fully set forth herein.

46.    ModernWash is the sole author and claimant, legal and/or beneficial owner of the federally registered copyrights in and to the architectural work titled *Axiom Prime – Sammy's Express*.

47.    Defendants have infringed ModernWash's copyright rights by reproducing portions of ModernWash's *Axiom Prime – Sammy's Express* through the construction of substantially similar architectural works and/or buildings, by adapting portions of *Axiom Prime – Sammy's Express* into derivative architectural works, and by copying and/or displaying *Axiom Prime – Sammy's Express* or unauthorized derivatives thereof without ModernWash's permission. 17 U.S.C. § 501.

48.    ModernWash is therefore entitled to injunctive relief (17 U.S.C. § 502), impounding and disposal of Defendants' infringing materials (17 U.S.C. § 503), and recovery of Defendants' profits attributable to its infringing acts and/or recovery of any profits lost as a result of the acts of copyright infringement set forth herein (17 U.S.C. § 504(b)).

49.    ModernWash's copyright in the *Axiom Prime – Sammy's Express* was federally registered with the U.S. Copyright Office before the commencement of Defendants' infringing acts.  17 U.S.C. § 412.

50.    ModernWash is entitled to, alternatively and at its election, statutory damages up to the amount of $30,000 per work infringed.  17 U.S.C. 504(c)(1). ModernWash is further entitled to recover attorney's fees incurred in pursuing its federal copyright claim.  17 U.S.C. § 505.

51.    Defendants' infringing acts were committed with constructive notice and actual knowledge of ModernWash's valid and subsisting copyright, such that Defendants' infringing acts were willful.  17 U.S.C. § 401.

52.    ModernWash is entitled to enhanced statutory damages of up to $150,000 for Defendants' infringement of *Axiom Prime – Sammy's Express* as set forth herein.  17 U.S.C. § 504(c)(2).

53.    Defendant Giannone was and is a moving, active, and conscious force behind the acts of copyright infringement as described herein and is, therefore, personally liable under Count I of the Complaint.

## COUNT II
### COPYRIGHT INFRINGEMENT—*AXIOM PRIME-SAMMY'S EXPRESS TECHNICAL* (17 U.S.C. §§ 106, 113, 501)
### (Against all Defendants)

54.    ModernWash reincorporates and realleges paragraphs 21-44 of this Complaint as if fully set forth herein.

55.    ModernWash is the sole author and claimant, legal and/or beneficial owner of the federally registered copyright in and to the technical drawings titled *Axiom Prime – Sammy's Express Technical*.

56.    Defendants have infringed ModernWash's copyright rights by reproducing portions of ModernWash's *Axiom Prime – Sammy's Express Technical*, by adapting portions of *Axiom Prime – Sammy's Express Technical* into derivative technical drawings, and by copying, publishing and/or displaying *Axiom Prime – Sammy's Express Technical* or unauthorized derivatives thereof without ModernWash's permission.  17 U.S.C. § 501.

57.    ModernWash is entitled to injunctive relief (17 U.S.C. § 502), impounding and disposal of Defendants' infringing materials (17 U.S.C. § 503), and recovery of Defendants' profits attributable to its infringing acts and/or recovery of any profits lost as a result of the acts of copyright infringement set forth herein (17 U.S.C. § 504(b)).

58.    ModernWash's copyright in and to *Axiom Prime – Sammy's Express Technical* was federally registered with the U.S. Copyright Office before the commencement of Defendants' infringing acts.  17 U.S.C. § 412.

59.    ModernWash is entitled to, alternatively and at its election, statutory damages up to the amount of $30,000 per work infringed.  17 U.S.C. 504(c)(1). ModernWash is further entitled to recover attorney's fees incurred in pursuing its federal copyright claim.  17 U.S.C. § 505.

60.    Defendants' infringing acts were committed with constructive notice and actual knowledge of ModernWash's valid and subsisting copyright, such that Defendants' infringing acts were willful.  17 U.S.C. § 401.

61.    ModernWash is entitled to enhanced statutory damages of up to $150,000 for Defendants' infringement of *Axiom Prime – Sammy's Express Technical* as set forth herein.  17 U.S.C. § 504(c)(2).

62.    Defendant Giannone was and is a moving, active, and conscious force behind the acts of copyright infringement as described herein and is, therefore, personally liable under Count II of the Complaint.

<u>COUNT III</u>
**CONTRIBUTORY COPYRIGHT INFRINGEMENT—*AXIOM PRIME-
SAMMY'S EXPRESS* (17 U.S.C. §§ 106, 113, 501)
<u>(Against CSG)</u>**

63.    ModernWash reincorporates and realleges paragraphs 21-44 of this Complaint as if fully set forth herein.

64.    ModernWash is the sole author and claimant, legal and/or beneficial owner of the federally registered copyrights in and to the architectural work titled *Axiom Prime – Sammy's Express.*

65.    Defendant Pettit has infringed ModernWash's copyright rights by reproducing portions of ModernWash's *Axiom Prime – Sammy's Express* through the

construction of substantially similar architectural works and/or buildings, by adapting portions of *Axiom Prime – Sammy's Express* into derivative architectural works, and by copying and/or displaying *Axiom Prime – Sammy's Express* or unauthorized derivatives thereof without ModernWash's permission. 17 U.S.C. § 501.

66.    Defendants CSG and Giannone, with knowledge of Defendant Pettit's infringement, induced, caused, and/or materially contributed to Pettit's infringing conduct by providing Pettit with unauthorized copies of ModernWash's copyrighted architectural designs, hiring Pettit to create unauthorized derivative designs thereof and to construct substantially similar derivative architectural works and/or buildings therefrom.

67.    Defendants CSG and Giannone therefore contributorily infringed ModernWash's copyright rights in and to *Axiom Prime – Sammy's Express* and are liable for all damages flowing from Defendant Pettit's direct infringement.

68.    ModernWash's copyright in the *Axiom Prime – Sammy's Express* <u>was</u> federally registered with the U.S. Copyright Office before the commencement of Defendant Pettit's infringing acts.  17 U.S.C. § 412.

69.    ModernWash is entitled to, alternatively and at its election, statutory damages up to the amount of $30,000 per work infringed.  17 U.S.C. 504(c)(1). ModernWash is further entitled to recover attorney's fees incurred in pursuing its federal copyright claim.  17 U.S.C. § 505.

70.    Defendants CSG's and Giannone's acts of contributory infringement were committed with constructive notice and actual knowledge of ModernWash's

valid and subsisting copyright, such that Defendants acts of contributory infringement were willful.  17 U.S.C. § 401.

71.    ModernWash is entitled to enhanced statutory damages of up to $150,000 for Defendant CSG's contributory infringement of *Axiom Prime – Sammy's Express* as set forth herein.  17 U.S.C. § 504(c)(2).

72.    Defendant Giannone was and is a moving, active, and conscious force behind the acts of copyright infringement as described herein and is, therefore, personally liable under Count III of the Complaint.

### COUNT IV
### CONTRIBUTORY COPYRIGHT INFRINGEMENT—*AXIOM PRIME-SAMMY'S EXPRESS TECHNICAL* (17 U.S.C. §§ 106, 113, 501)
### (Against CSG)

73.    ModernWash reincorporates and realleges paragraphs 21-44 of this Complaint as if fully set forth herein.

74.    ModernWash is the sole author and claimant, legal and/or beneficial owner of the federally registered copyrights in and to the architectural work titled *Axiom Prime – Sammy's Express Technical.*

75.    Defendant Pettit has infringed ModernWash's copyright rights by reproducing portions of ModernWash's *Axiom Prime – Sammy's Express Technical* through the construction of substantially similar architectural works and/or buildings, by adapting portions of *Axiom Prime – Sammy's Express* into derivative architectural works, and by copying and/or displaying *Axiom Prime – Sammy's Express Technical* or unauthorized derivatives thereof without ModernWash's permission. 17 U.S.C. § 501.

76.    Defendants CSG and Giannone, with knowledge of Defendant Pettit's infringement, induced, caused, and/or materially contributed to Pettit's infringing conduct by providing Pettit with unauthorized copies of ModernWash's copyrighted architectural designs, hiring Pettit to create unauthorized derivative designs thereof and to construct substantially similar derivative architectural works and/or buildings therefrom.

77.    Defendants CSG and Giannone therefore contributorily infringed ModernWash's copyright rights in and to *Axiom Prime – Sammy's Express Technical* and is liable for all damages flowing from Defendant Pettit's direct infringement.

78.    ModernWash's copyright in the *Axiom Prime – Sammy's Express Technical* <u>was</u> federally registered with the U.S. Copyright Office before the commencement of Defendant Pettit's infringing acts.  17 U.S.C. § 412.

79.    ModernWash is entitled to, alternatively and at its election, statutory damages up to the amount of $30,000 per work infringed.   17 U.S.C. 504(c)(1). ModernWash is further entitled to recover attorney's fees incurred in pursuing its federal copyright claim.  17 U.S.C. § 505.

80.    CSG's and Giannone's acts of contributory infringement were committed with constructive notice and actual knowledge of ModernWash's valid and subsisting copyright, such that Defendants' acts of contributory infringement were willful.  17 U.S.C. § 401.

81.    ModernWash is entitled to enhanced statutory damages of up to $150,000 for Defendants' contributory infringement of *Axiom Prime – Sammy's Express Technical* as set forth herein.  17 U.S.C. § 504(c)(2).

82.    Defendant Giannone was and is a moving, active, and conscious force behind the acts of copyright infringement as described herein and is, therefore, personally liable under Count IV of the Complaint.

**COUNT V**
**TRADE SECRET MISAPPROPRIATION**
**Under the Defend Trade Secrets Act**
**(18 U.S.C. § 1831 *et seq*.)**
**(Against all Defendants)**

83.    ModernWash reincorporates and realleges paragraphs 13-15, 17-19, and 21-44 of this Complaint as if fully set forth herein.

84.    ModernWash's Trade Secrets derive substantial, independent economic value from not being generally known to the public or to anyone who could obtain economic value from the information. ModernWash has expended substantial financial and human resources to develop this information, which cannot be easily acquired or replicated by others.

85.    ModernWash has taken reasonable efforts to maintain the secrecy of its Trade Secrets, including through allowing only limited access to such material and by executing noncompetition or nondisclosure agreements with those who have been provided access to the Trade Secrets.  This includes the Agreement entered between ModernWash and CSG.

86.    ModernWash's Trade Secrets are valuable and important to the operation of its business.

87.    ModernWash's Trade Secrets are not known and are not readily ascertainable through proper means.  Defendants could profit from the use or disclosure of ModernWash's Trade Secrets.

88.    Defendants have used in interstate commerce and/or misappropriated ModernWash's Trade Secrets for their own benefit and without ModernWash's consent.

89.    Defendants unlawfully acquired ModernWash's Trade Secrets and/or knew or had reason to know that these materials were acquired through improper means and under circumstances giving rise to a duty to maintain the secrecy of the Trade Secrets, and/or derived from a person or persons who owed such a duty to maintain the secrecy of these materials or limit their use.

90.    Upon information and belief, Defendants' acts and conduct were and are willful and malicious, and in conscious disregard of the rights of ModernWash.

91.    By reason of Defendants' violation of the DTSA, ModernWash faces immediate, substantial, and irreparable harm for which there is no adequate remedy at law.

92.    As a direct and proximate result of Defendants' violation of the DTSA, ModernWash has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated.  ModernWash is entitled to a

preliminary and permanent injunction preventing further use of its trade secrets and confidential material.

93.    ModernWash is entitled to recover from Defendants compensatory damages for the acts of misappropriation described herein, including any actual losses, unjust enrichment, reasonable royalties, exemplary damages, attorneys' fees and reasonable costs.

94.    Defendant Giannone was and is a moving, active, and conscious force behind the acts of trade secret misappropriation as described herein and is, therefore, personally liable under Count V of the Complaint.

**<u>COUNT VI</u>**
**TRADE SECRET MISAPPROPRIATION**
**Under the Kentucky Uniform Trade Secrets Act or**
**the New Jersey Trade Secrets Act**
**(KRS § 365.880 *et seq.* and N.J.S.A. 56:15-1 *et seq.*)**
**(Against all Defendants)**

95.    ModernWash reincorporates and realleges paragraphs 13-15, 17-19, and 21-44 of this Complaint as if fully set forth herein.

96.    ModernWash's Trade Secrets derive substantial, independent economic value from not being generally known to the public or to anyone who could obtain economic value from the information. ModernWash has expended substantial financial and human resources to develop this information, which cannot be easily acquired or replicated by others.

97.    ModernWash has taken reasonable efforts to maintain the secrecy of its Trade Secrets including through allowing only limited access to such material and by executing noncompetition or nondisclosure agreements with those who have been

provided access to the Trade Secrets. This includes the Agreement entered into between ModernWash and CSG.

98.    ModernWash's Trade Secrets are valuable and important to the operation of its business.

99.    ModernWash's Trade Secrets are not known and are not readily ascertainable through proper means. Defendants could and have profited from the use or disclosure of ModernWash's Trade Secrets.

100.    Defendants have misappropriated ModernWash's Trade Secrets for their own benefit and without ModernWash's consent.

101.    Defendants unlawfully acquired ModernWash's Trade Secrets and/or knew or had reason to know that these materials were acquired through improper means and under circumstances giving rise to a duty to maintain the secrecy of the Trade Secrets, and/or derived from a person or persons who owed such a duty to maintain the secrecy of these materials or limit their use.

102.    Upon information and belief, Defendants' acts and conduct were and are willful and malicious, and in conscious disregard of the rights of ModernWash.

103.    By reason of Defendants' violation of the KUTSA or the NJTSA, ModernWash faces immediate, substantial, and irreparable harm for which there is no adequate remedy at law.

104.    As a direct and proximate result of Defendants' violation of the KUTSA or the NJTSA, ModernWash has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated. ModernWash is entitled

to a preliminary and permanent injunction preventing further use or disclosure of its Trade Secrets.

105.    ModernWash is entitled to recover from Defendants compensatory damages for the acts of misappropriation described herein, including any actual losses, unjust enrichment, reasonable royalties, exemplary damages, attorneys' fees and reasonable costs.

106.    Defendant Giannone was and is a moving, active, and conscious force behind the acts of trade secret misappropriation as described herein and is, therefore, personally liable under Count VI of the Complaint.

## COUNT VII
## BREACH OF CONTRACT
## (Against CSG)

107.    ModernWash reincorporates and realleges paragraphs 21-44 of this Complaint as if fully set forth herein.

108.    The Agreement entered between ModernWash and CSG is a valid and enforceable contract, whereby ModernWash agreed to provide CSG with Confidential Information as described therein.

109.    CSG agreed that it would not reproduce, disclose, publish, communicate, share, make known or otherwise use any Confidential Information obtained from ModernWash without the express permission of ModernWash.

110.    Under the Agreement, ModernWash provided CSG with the Confidential Information described herein.

111.   The parties agreed that CSG would keep ModernWash's Confidential Information and Trade Secrets confidential and that CSG could not disclose or use ModernWash's Confidential Information or Trade Secrets in any way without the permission of ModernWash.

112.   CSG has unlawfully acquired, used and/or disclosed ModernWash's Confidential Information, without the permission of ModernWash.

113.   CSG's use and/or disclosure of ModernWash's Confidential Information and/or Trade Secrets is in breach of the Agreement.

114.   As a direct and proximate result of CSG's breach or breaches of the Agreement, ModernWash has suffered damages, including but not limited to loss of revenues to which it would otherwise be entitled, loss of potential revenues, harm to reputation, and in other amounts to be determined by the evidence.

115.   ModernWash is entitled to recover compensatory, incidental, and consequential damages from CSG and such other relief as the Court may find appropriate.

## COUNT VII
## BREACH OF CONTRACT
### (Against Pettit)

116.   ModernWash reincorporates and realleges paragraphs 31-34 of this Complaint as if fully set forth herein.

117.   The Agreement entered between ModernWash and Pettit is a valid and enforceable contract, whereby ModernWash agreed to provide Pettit with Confidential Information as described therein.

118.   Pettit agreed that it would not reproduce, disclose, publish, communicate, share, make known or otherwise use any Confidential Information obtained from ModernWash without the express permission of ModernWash.

119.   Under the Agreement, ModernWash provided Pettit with the Confidential Information described herein.

120.   The parties agreed that Pettit would keep ModernWash's Confidential Information and Trade Secrets confidential and that CSG could not disclose or use ModernWash's Confidential Information or Trade Secrets in any way without the permission of ModernWash.

121.   Pettit has unlawfully acquired, used and/or disclosed ModernWash's Confidential Information, without the permission of ModernWash.

122.   Pettit's use and/or disclosure of ModernWash's Confidential Information and/or Trade Secrets is in breach of the Agreement.

123.   As a direct and proximate result of Pettit's breach or breaches of the Agreement, ModernWash has suffered damages, including but not limited to loss of revenues to which it would otherwise be entitled, loss of potential revenues, harm to reputation, and in other amounts to be determined by the evidence.

124.   ModernWash is entitled to recover compensatory, incidental, and consequential damages from Pettit and such other relief as the Court may find appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

***With respect to claims of copyright infringement***

1.    That Defendants have willfully violated Section 501 of the Copyright Act, 17 U.S.C. § 501.

2.    Granting an injunction enjoining the Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

    a.    reproducing or preparing derivative works based on any and all of ModernWash's copyrighted works, or publicly displaying any of ModernWash's copyrighted works, anywhere in the United States; and

    b.    aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraph (a).

3.    That Defendants be ordered to render an accounting of Defendants' profits attributable to Defendants' infringing conduct, profits from sales and any other exploitation of ModernWash's copyrighted works, and any products, works, or other materials that include, copy, are derived from, or otherwise embody ModernWash's copyrighted works.

4.     That Defendants be ordered to destroy or deliver up for destruction all materials in Defendants' possession, custody, or control used by Defendants in connection with Defendants' infringing conduct, including without limitation all remaining copies of ModernWash's copyrighted works and any products and works that embody any reproduction or other copy or substantially similar embodiment of ModernWash's copyrighted works and including any architectural plans and/or drawings which were derived from ModernWash's copyrighted works.

5.     That Defendants, at their own expense, be ordered to recall ModernWash's copyrighted works from any distributors, retailers, vendors, or others that have been provided and/or distributed ModernWash's copyrighted works on Defendants' behalf, and any products, works, or other materials that include, copy, are derived from, or otherwise embody ModernWash's copyrighted works, and that Defendants be ordered to destroy or deliver up for destruction all materials returned to it.

6.     Awarding ModernWash:

a.     Defendants' profits obtained as a result of Defendants' infringing conduct, including but not limited to all profits from the use, sales and other exploitation of ModernWash's copyrighted works and any products, works, or other materials that include, copy, are derived from, or otherwise embody ModernWash's copyrighted works, or, in the alternative and at ModernWash's election, statutory damages in such amount as the Court finds to be just and proper; and

      b.      damages sustained by ModernWash as a result of Defendants' infringing conduct, including but not limited to any lost profits or revenues, in an amount to be proven at trial; or

      c.      statutory damages for willful infringement of ModernWash's copyrights in an amount not to exceed $150,000 per work infringed; or

      d.      statutory damages for infringement of ModernWash's copyrights in an amount not to exceed $30,000 per work infringed.

7.      Awarding ModernWash interest, including pre-judgment and post-judgment interest, on the foregoing sums.

8.      Awarding ModernWash its attorneys' fees incurred in pursuit of this action.

9.      Awarding such other and further relief as the Court deems just and proper.

***With respect to claims of trade secret misappropriation***

10.      That Defendants have willfully violated the Defend Trade Secrets Act, 18 U.S.C. § 1836, the Kentucky Uniform Trade Secrets Act, KRS § 365.880 *et seq.*, and/or the New Jersey Trade Secrets Act N.J.S.A. 56:15-1 *et seq* by using and/or disclosing ModernWash's Trade Secrets.

11.      Granting an injunction enjoining the Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons

and entities who receive actual notice of the Court's order by personal service or otherwise from using or disclosing any ModernWash Trade Secrets.

12.     Ordering Defendants to return all proprietary and confidential material of ModernWash, including any Trade Secrets.

13.     Defendants to account and pay over to ModernWash all damages sustained by ModernWash, Defendants' profits, compensatory damages, punitive damages, reasonable royalties, attorney's fees, and costs.

14.     Awarding ModernWash interest, including prejudgment and post-judgment interest, on the foregoing sums.

15.     Awarding such other and further relief as the Court deems just and proper.

***With respect to claim for breach of contract***

16.     That Defendant CSG has breached the Agreement.

17.     Awarding ModernWash general and special damages in an amount to be determined at trial.

18.     Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums.

19.     Awarding such other and further relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiff hereby requests a jury trial on all claims which are permitted to be tried by a jury under the Federal Rules of Civil Procedure.

Dated: September 25, 2022

Respectfully submitted,

*s/Brian McGraw*

_____

Robert J. Theuerkauf
Brian P. McGraw
**GRAY ICE HIGDON, PLLC**
3939 Shelbyville Road, Unit 201
Louisville, Kentucky 40207
Phone: (502) 677-4729
Fax: (502) 561-0442
rjt@grayice.com
bmcgraw@grayice.com

ATTORNEYS FOR PLAINTIFF